**HOLLISTER LAW OFFICE, APC**  (Bar No. 302125)
Bradley C. Hollister (bradley@hollisterlawoffice.com)
228 W. Carrillo Street, Suite D
Santa Barbara, CA 93101
(805) 284-0711
Attorneys for Plaintiff

**ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
Robert A. Soloway (rsoloway@rssslaw.com)
David Stern (dstern@rssslaw.com)
100 Lafayette Street
New York, New York 10013
(212) 571-5500
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELLEY McCONNELL, fiduciary and representative of the Estate of MOHAMED YUSUF, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, JOHN DOES 1 - 10 and SUPERVISOR JOHN DOES 10 - 20 OF THE DEPARTMENT OF JUSTICE AND THE FEDERAL BUREAU OF PRISONS,<br><br>Defendants. | Case No: 2:21-cv-03661<br><br>COMPLAINT<br><br>Jury Trial Demanded |

Plaintiff, SHELLEY McCONNELL, as court-appointed fiduciary and representative of the Estate of MOHAMED YUSUF, Deceased, hereby alleges, upon information and belief, as follows:

**GENERAL ALLEGATIONS**

1.   This action on behalf of the Deceased is a combination Civil Rights (*Bivens*) and Federal Tort action seeking, as to the former, compensatory and exemplary damages for violation of Decedent's Constitutional rights; and as to the latter, compensatory damages for pain, suffering, and injury to Decedent's person, and for wrongful death.

2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States of America, specifically, the Eighth Amendment to the United States Constitution and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671-2680 (hereinafter, "the FTCA").

3.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1402(b) as that is the judicial district in which the acts or omissions complained of occurred.

**STATEMENT OF FACTS**

4.  MOHAMED YUSUF's life was cut short in May, 2020 due to the failure of the Bureau of Prisons ("BOP"), by its agents and employees, to secure for him necessary medical treatment when he grew seriously ill from COVID-19.

5.  A 37 year old man in sturdy health before becoming infected with the virus, Decedent was, at all relevant times, serving a 132 month prison sentence at the Federal Correctional Institution Lompoc, 3600 Guard Road, Lompoc, California ("Lompoc"), the lower security section of the Federal Correctional Complex to which FCI Lompoc belongs.

6.  Decedent tested positive for COVID-19 on or about May 7, 2020.  Over time, he became increasingly ill, but his medical needs were ignored by correctional and managerial staff despite their awareness of his illness.

7.  When he was symptomatic -- coughing and struggling for air for many days -- BOP correctional and managerial staff knew of his condition but disregarded a known and excessive risk to Decedent's medical needs by refusing to take him to a hospital, or provide appropriate treatment.  On the day he died, May 25, 2020, Decedent was unable to breathe.  He gasped for air and he prayed.  Eventually, he lost consciousness and he died.

8.  Other inmates witnessed and called attention to YUSUF's protracted struggle for life in an effort to help him.  They called loudly to correctional staff in efforts to secure him help.

9.  Correctional staff heard the calls of the Decedent and of the other inmates and knew their essential nature.

10.  While correctional staff knew of Decedent's dire need for help, they did not provide it and some joked about the matter, going so far as to call the Decedent a "faker."

11.  Contrary to their legal obligation to provide for the safe "care and custody" of those detained -- not to mention their fundamental duty to act in conformity with core precepts of human decency -- Lompoc staff and managers failed to provide or secure medical treatment and disregarded Decedent's struggles for breath and life.

12. Deliberately indifferent to Decedent's plainly emergent medical needs, BOP employees and agents did not help him. They let him die and did not lift a finger.

## SUMMARY OF LEGAL CLAIMS

13. Plaintiff brings claims against individual employees of the United States under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971), who are accountable for violating rights guaranteed Decedent under the Eighth Amendment to the United States Constitution. Additionally, Plaintiff pleads under the Federal Tort Claims Act for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1).

## PARTIES

14. Plaintiff, Shelley McConnell, is the duly appointed Special Administrator, nominated by the surviving spouse of the Decedent, and empowered by the Superior Court of California, County of Santa Barbara, to initiate and prosecute the instant litigation on behalf of the Decedent's Estate.

15. During his life, MOHAMED YUSUF, was a citizen of the country of Sweden, extradited to the United States from Djibouti on or about November 12, 2012 to face federal criminal charges. In 2015, he pleaded guilty in the United States District Court for the Eastern District of New York to rendering material aid to a designated foreign terrorist organization based upon his participation in the Somali civil war as a soldier in the fighting forces of Harakat al-Shabaab al-Mujahideen, more commonly known as al-Shabaab.

16. Defendant, UNITED STATES OF AMERICA, is a sovereign entity and nation, which employed the agents, servants and employees whose negligent, tortious, willful, and deliberately indifferent acts contributed to and proximately caused Decedent's death.

17. LOUIS MILUNSIC (hereinafter "Defendant Milusnic," "Warden Milusnic," or "Warden"), at all times relevant, was the Warden at Lompoc. As Warden, Defendant Milusnic was responsible for and oversaw all day-to-day activities at Lompoc. He was in charge of all aspects

of the operations and functions of the prison complex. His responsibilities included implementing procedures to promote the safety of the institution and it's orderly operation. Warden Milusnic was aware of and adopted or tolerated procedures and lapses that left Decedent -- and those similarly situated -- exposed to infection, severe illness, and, ultimately, death due to COVID-19.

18. Warden Milusnic, knowing specifically of the Decedent's dire medical condition before he passed away, failed to order the delivery of necessary medical care to Decedent, and by such failure, was deliberately indifferent and disregarded a known and significant risk to YUSUF's health and medical needs. Warden Milusnic is sued in his personal capacity.

19. Defendant MICHAEL CARVAJAL, is the Director of the Federal Bureau of Prisons (hereinafter "Defendant Carvajal," "Director Carvajal," or "Director").  As Director, Defendant Carvajal is ultimately responsible for implementing all BOP policies and procedures, including those pertaining to resource distribution and the facts and factors that BOP leadership, including Wardens, should properly consider in determining an incarcerated individual's medical needs. His responsibilities include implementing BOP systems which promote the safe care and custody of detainees and the safe operation of BOP facilities for both staff and inmates.

20. Director CARVAJAL, knowing specifically of the Decedent's dire medical condition before his death, failed to order the delivery of necessary medical care to be provided, and in such failure, was deliberately indifferent and disregarded a known and significant risk to YUSUF's health and medical needs.  Director Carvajal is sued in his personal capacity.

21. Defendants, JOHN DOES 1 - 10, are presently unidentified correctional officers of the BOP who participated in the deliberately indifferent and otherwise unlawful conduct against the Decedent, and whose malfeasance and derelictions of duty directly caused or contributed to the damage complained of herein.  Plaintiff intends to identify, serve, and proceed against these individuals at such time as she is able.

22. Defendants, JOHN DOES 11 - 20 are presently unidentified supervisory officials of the Department of Justice and BOP whose failures, mis-conduct, and personal involvement in the denial of necessary medical care and services for Decedent constituted deliberate indifference to his medical needs. Their malfeasance and derelictions of duty directly caused or contributed to the damage of which Plaintiff complains.  Plaintiff intends to identify, serve, and proceed against these

individuals at such time as she is able.

**FIRST CLAIM FOR RELIEF FOR
VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW**

(*Bivens Action Against All Defendants*)

23.   Plaintiff repeats and re-alleges each preceding paragraph as though fully restated herein.

24.   That on or about the time period May 7 through May 25, 2020, at Lompoc FCI, the Defendants subjected the Decedent to cruel and unusual punishment when, with deliberate indifference to his health and welfare, they individually, collectively, and knowingly disregarded his medical condition and failed to deliver or secure medical assistance for him, proximately causing and/or contributing to his severe suffering and ultimate death.

25.   In a press release twenty one days before YUSUF's death, BOP publicly announced that Lompoc's medical capabilities had been supplemented with a newly constructed Hospital Care Unit ("HCU") equipped with "ten double-occupancy, acute care treatment rooms with negative pressure, Patient Intake Room, Nurses Station, Pharmacy, Linen Exchange Room, Biohazard Room and Medical Supply and Storage."[1]

26.   Decedent, however, during his illness, languished, coughed, thrashed, and gasped, ultimately dying on the floor of his prison unit, without receiving an iota of meaningful medical treatment or hospital attention.

27.   Due wholly and solely to the deliberately indifferent acts and omissions of the Defendants, the Decedent was caused to sustain severe personal injuries, suffering, and death.

28.   In violation of the Eighth Amendment to the Constitution, by failing to deliver or secure necessary medical treatment for the Decedent, Defendants disregarded obvious excessive risk to his medical needs in contravention of their duty.

29.   In totally failing to address Decedent's emergency medical condition, the Defendants departed from accepted standards applicable to the security and oversight of the Decedent, and failed to follow appropriate security and emergency medical practice.

---

[1] BOP Press Release, May 4, 2020, annexed as Exhibit A.

30. Defendants failures to properly and timely treat the Decedent's plainly visible dire illness resulted in his acute suffering and wrongful death.

31. Each of the individual defendants and John Does were acting under color of law by exercising power made possible because the Defendants were clothed with the authority of federal law.

32. Supervisory officials were malfeasant in the manner in which they oversaw assigned correctional officers and available medical staff, and the manner in which they callously tolerated the inadequate response to Decedent's physical deterioration and ultimate death. Additionally, their individual culpable actions and failures to act in the training, supervision, and control of subordinates who owed a duty to Decedent, and their personal callous indifference to Decedent's dire and worsening medical condition in May 2020, render them liable to Plaintiff's Decedent in damages.

33. As a result of the aforesaid knowing and deliberately indifferent acts, Decedent was caused to sustain severe injuries, conscious pain and suffering, mental anguish, and death.

34. Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny, the Defendants, and all of them, are liable in damages to Plaintiff's Decedent for violating Decedent's constitutional rights as stated.

35. The acts of the named agents, and presently unknown correctional and supervisory staff, were all done under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the United States.

36. As a consequence of the foregoing, Plaintiff's Decedent has been damaged by the individual Defendants in a sum to be determined at trial, for compensatory, pecuniary, and punitive damages, together with taxable costs and appropriate and lawful fees.

**SECOND CLAIM FOR RELIEF FOR CAUSING**
**PERSONAL INJURY AND DEATH BY NEGLIGENCE OR WRONGFUL ACTS**

(*FTCA Action Against the United States of America*)

37. Plaintiff repeats and re-alleges each preceding paragraph as though fully restated herein.

38. Correctional staff members did nothing to treat or secure treatment for the Decedent's

illness nor did they try to prevent his death when he was in evident medical extremis.

39. Their acts and omissions constitute a lazy, malfeasant, and/or careless failure to perform required duties.

40. As set forth, the wrongful acts and omissions identified, which constitute on the part of United States' agents, negligence and gross negligence, and recklessness and gross recklessness, include, but are not limited to: failing to properly inspect, repair, and maintain the Lompoc facility to render its environs safe, clean, and suitable pursuant to COVID-19 guidelines and mandates, and thereby failing to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of an offense," as is required pursuant to 18 U.S.C. § 4042(a); in having both actual and constructive notice of the risks to health and safety of the Decedent posed by COVID-19, and to others similarly situated, without taking appropriate steps to address such circumstance and to safeguard the inmates whose safety was their charge; prior to Decedent's death, or to him becoming grievously ill and on the verge of death, in failing to provide adequate and emergently needed medical care; allowing the Decedent to needlessly suffer from a known dangerous illness without providing needed medical care, thereby causing Decedent to suffer pain in both mind and body, and to die; and thereby also causing Decedent's survivors to sustain economic loss, and be otherwise damaged.

41. Under the Federal Torts Claims Act, the Defendant, United States of America, is liable for the above described failures of its agents, servants and employees, who by law were called upon to act in furtherance of their employment as BOP correction officers and supervisors by carrying out the appointed duties owed the Decedent, which instead, they neglected and ignored.

## **PRAYER FOR RELIEF**

On account of all of the foregoing, Plaintiff prays for a JURY TRIAL and for relief as follows:

 A. On Plaintiff's First Cause of Action, compensatory, special, and punitive damages against personally responsible individual defendants in an amount to be proven at trial.

 B. On Plaintiff's Second Cause of Action, compensatory damages against the United States in an amount to be proven at trial.

 C. Interest, costs, and fees, to include attorney's fees.

 D. Any and all further relief as the Court deems just and equitable.

Dated: April 28, 2021

         **HOLLISTER LAW OFFICE, APC**
         Attorneys for Plaintiff
         228 W. Carrillo Street, Suite D
         Santa Barbara, CA 93101
         (805) 284-0711

         /s/ *Bradley C. Hollister*
         Bradley C. Hollister

         **ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
         Attorneys for Plaintiff
         100 Lafayette Street, Suite 501
         New York, New York 10013

         /s/ *Robert A. Soloway*
         Robert A. Soloway

8
COMPLAINT

# Exhibit A



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**  
May 4, 2020

Contact: Office of Public Affairs  
202-514-6551

## Hospital Care Unit at FCC Lompoc

Lompoc, CA: In under four weeks, the Federal Correctional Complex (FCC) in Lompoc, California, finalized construction of a Hospital Care Unit (HCU) inside the prison walls in response to the COVID-19 pandemic. The HCU is located within a decommissioned Prison Industry factory, inside the confines of the medium-security component of the Complex, otherwise known as USP Lompoc. The transformation from office space to working hospital included a complete renovation, gutting the existing floor and wall coverings, replacing duct work, upgrading electric lines, installing showers, and building a Nurses Station.

The concept to build the hospital began on April 9, 2020, after the institution's first positive COVID-19 inmate case was identified on March 31, 2020. Based on the size of the inmate population, the epidemic curve projected a high volume of cases, which would require a level of hospitalization the local community would be unable to meet.

The HCU is comprised of ten (10) double-occupancy, acute care treatment rooms with negative pressure, Patient Intake Room, Nurses Station, Pharmacy, Linen Exchange Room, Biohazard Room, and Medical Supply & Storage. Several areas were retrofitted to accommodate an Officer's Station, a Staff Lounge, and Staff Locker Room, complete with shower stalls for use to mitigate the risk of exposure to infectious diseases, including COVID-19.

FCC Lompoc negotiated a contract for medical personnel, including Doctors, Registered Nurses, Paramedics, Pharmacist, Physician Assistants, Nurse Assistants, and a Clinical Manager, who will work in conjunction with FCC Lompoc Health Services staff. Cases normally requiring outside hospitalization will be treated within the prison, minimizing the impact on the community and further ensuring public safety.

FCC Lompoc and Bureau of Prisons staff from throughout the Western Region are commended for the extraordinary amount of work and completing the project in an unprecedented amount of time.  On Friday, May 1, 2020, a ceremony was held to dedicate the Hospital Care Unit which is scheduled to open on Wednesday, May 6, 2020.

The Bureau of Prisons will continue to provide daily updates and information on actions related to COVID-19 at www.bop.gov/coronavirus/index.jsp

Additional information about the Bureau of Prisons can be found at www.bop.gov.

###