# Exhibit A

**HOLLISTER LAW OFFICE, APC**  (Bar No. 302125)
Bradley C. Hollister (bradley@hollisterlawoffice.com)
228 W. Carrillo Street, Suite D
Santa Barbara, CA 93101
(805) 284-0711
Attorneys for Plaintiff

**ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
Robert A. Soloway (rsoloway@rssslaw.com)
David Stern (dstern@rssslaw.com)
100 Lafayette Street
New York, New York 10013
(212) 571-5500
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY McCONNELL, fiduciary and representative of the Estate of MOHAMED YUSUF, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, MICHAEL CARVAJAL, Director of the Bureau of Prisons, PATRICIA V. BRADLEY, Warden of Lompoc Correctional Institution, JASPAL DAHLIWAL, WILLIAM WATSON, GALYNA MISCHENKO, ALAN W. WONG, JASON CHRISTOPHER, SHANE FABIE, MICHAEL ROBERTS, BEN WOOTEN, DDS, FNU GARDNER, FNU CARO, FNU WRINKOVICH, FNU JOHNSON, JOHN DOES 1 - 10 and  SUPERVISOR JOHN DOES 10 - 20 of THE  DEPARTMENT OF JUSTICE and THE FEDERAL BUREAU OF PRISONS, <br><br> Defendants. | Case No: 21 Civ. 3661 (CBM) <br><br> [PROPOSED] <br> FIRST AMENDED COMPLAINT <br><br> Jury Trial Demanded |

Plaintiff, SHERRY McCONNELL, as court-appointed fiduciary and representative of the Estate of MOHAMED YUSUF, Deceased, hereby alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This action on behalf of the Deceased is a combination Civil Rights (*Bivens*) and Federal Tort action seeking, as to the former, compensatory and exemplary damages for violation of Decedent's Constitutional rights; and as to the latter, compensatory damages for pain, suffering, and injury to Decedent's person, and for wrongful death.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action

arises under the laws of the United States of America, specifically, the Eighth Amendment to the United States Constitution and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671-2680 (hereinafter, "the FTCA").

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1402(b) as that is the judicial district in which the acts or omissions complained of occurred.

**PARTIES**

4. Plaintiff, SHERRY McCONNELL, is the duly appointed Special Administrator, nominated by the surviving spouse of the Decedent, and empowered by the Superior Court of California, County of Santa Barbara, to initiate and prosecute the instant litigation on behalf of the Decedent's Estate.

5. During his life, MOHAMED YUSUF, was a citizen of the country of Sweden, extradited to the United States from Djibouti on or about November 12, 2012 to face federal criminal charges. In 2015, he pleaded guilty in the United States District Court for the Eastern District of New York to rendering material aid to a designated foreign terrorist organization based upon his participation in the Somali civil war as a soldier in the fighting forces of Harakat al-Shabaab al-Mujahideen, more commonly known as al-Shabaab. Until his death, MOHAMED YUSUF was held in custody by the United States Department of Justice, Bureau of Prisons (hereinafter "USDOJ-BOP" or "BOP").

6. Defendant, UNITED STATES OF AMERICA, is a sovereign entity and nation, which employed the agents, servants and employees whose negligent, tortious, willful, and deliberately indifferent acts contributed to and proximately caused Decedent's death.

7. Defendant, MICHAEL CARVAJAL, is the Director of the Federal Bureau of Prisons (hereinafter "Defendant Carvajal," "Director Carvajal," or "Director"). As Director, Defendant CARVAJAL is ultimately responsible for implementing all BOP policies and procedures, including those pertaining to resource distribution and the facts and factors that BOP leadership, including Wardens, should properly consider in determining an incarcerated individual's medical needs. His responsibilities include implementing BOP systems which promote the safe care and custody of detainees and the safe operation of BOP facilities for both staff and inmates.

8. Director CARVAJAL, knowing specifically of the Decedent's dire medical condition before his death, failed to order the delivery of necessary medical care to be provided, and in such

failure, was deliberately indifferent and disregarded a known and significant risk to YUSUF's health and medical needs. Director Carvajal is sued individually and in his official capacity.

9. PATRICIA V. BRADLEY (hereinafter "Defendant Bradley," "Warden Bradley" or "Warden"), at all times relevant, was the Warden at Lompoc FCI. As Warden, Defendant Bradley was responsible for and oversaw all day-to-day activities at Lompoc FCI. She was in charge of all aspects of the operations and functions of the institution. Her responsibilities included implementing procedures to promote the safety of the institution and it's orderly operation. Warden Bradley was aware of and adopted or tolerated procedures and lapses that left Decedent -- and those similarly situated -- exposed to infection, severe illness, and, ultimately, death due to COVID-19.

10. PATRICIA V. BRADLEY knew of decedent's dire condition before he passed away, failed to order the delivery of necessary medical care to Decedent, and by such failure, was deliberately indifferent and disregarded a known and significant risk to decedent's health and medical needs. PATRICIA V. BRADLEY is sued individually and in her official capacity.

11. JASPAL DAHLIWAL is a medical doctor employed by the USDOJ-BOP, who was acting under color of law as a BOP employee assigned to the Lompoc Correctional Complex. He was among the medical providers duty bound to provide medical care to the deceased prior to his death, including during the period when the deceased suffered from COVID-19. He is sued in both his employment/agency and individual capacities.

12. WILLIAM WATSON is a medical doctor employed by the USDOJ-BOP, who was acting under the color of law, while ostensibly providing medical services to the deceased during his incarceration by the BOP. He was among the medical providers duty bound to provide medical care to the deceased prior to his death, including during the period when the deceased suffered from COVID-19. He is sued in both his employment/agency and individual capacities.

13. GALYNA MISCHENKO is a nurse practitioner who was at all times relevant employed by the USDOJ-BOP, and who acted under the color of law while ostensibly providing medical services to the deceased during his incarceration by the BOP. She was among the medical providers duty bound to provide medical care to the deceased prior to his death, including while the deceased was suffering from COVID–19 and reporting to the medical unit in pursuit of care and treatment. She is sued in both her employment/agency and individual capacities.

14. ALAN W. WONG was at all times relevant an Emergency Medical Technician and Paramedic employed by the BOP who was acting under color of law in ostensibly rendering medical services to the deceased during his incarceration by the BOP, and while the deceased was suffering from COVID–19 and reporting to the medical unit in pursuit of care and treatment. He is sued in both his employment/agency and individual capacities.

15. SHANE FABIE was at all times relevant a Paramedic employed by the BOP who was acting under color of law in ostensibly rendering medical services to the deceased during his incarceration by the BOP, including while the deceased was suffering from COVID–19 and was reporting to the medical unit in pursuit of care and treatment. He is sued in both his employment/agency and individual capacities.

16. JASON CHRISTOPHER was at all times relevant a Paramedic and Health Administrator employed by the BOP who was acting under color of law in ostensibly rendering medical services to the deceased during his incarceration by the BOP, and while the deceased was suffering from COVID–19 and reporting to the medical unit in pursuit of care and treatment. He is sued in both his employment/agency and individual capacities.

17. MICHAEL ROBERTS was at all times relevant a Staff Chaplain employed by the BOP who was acting under color of law in ostensibly rendering spiritual support and services to the deceased during his incarceration by the BOP, including while the deceased suffered from COVID–19 and became increasingly ill and closer to death. He is sued in both his employment/agency and individual capacities.

18. BEN C. WOOTEN, DDS, was a dentist employed or contracted with by the BOP to provide dental services to the inmate population at Lompoc FCI. He is sued in both his employment/agency and individual capacities.

19. FNU GARDNER, FNU CARO, FNU WRINKOVICH, and FNU JOHNSON, were at all times relevant USDOJ-BOP correctional officers, acting under color of law and assigned and on duty at E Floor, B Dorm within Lompoc FCI. They are each sued individually and in their official capacities.

20. Defendants, JOHN DOES 1 - 5, are presently unidentified correctional officers of the BOP who participated in the deliberately indifferent and otherwise unlawful conduct against the

Decedent, and whose malfeasance and derelictions of duty directly caused or contributed to the damage complained of herein. Plaintiff intends to identify, serve, and proceed against these individuals at such time as she is able.

21. Defendants, JOHN DOES 6 - 10 are presently unidentified supervisory officials of the Department of Justice and BOP whose failures, mis-conduct, and personal involvement in the denial of necessary medical care and services for Decedent constituted deliberate indifference to his medical needs. Their malfeasance and derelictions of duty directly caused or contributed to the damage of which Plaintiff complains. Plaintiff intends to identify, serve, and proceed against these individuals at such time as she is able.

## STATEMENT OF FACTS

22. MOHAMED YUSUF's life was cut short on May 25, 2020 due to the failure of the Bureau of Prisons ("BOP"), by its agents and employees, to secure for him available medical treatment he needed to survive when he grew seriously ill from COVID-19.

23. A 37 year old man in sturdy health before becoming infected with the virus, Decedent was, at all relevant times, serving a 132 month prison sentence at the Federal Correctional Institution Lompoc, 3600 Guard Road, Lompoc, California ("Lompoc"), the lower security section of the Federal Correctional Complex to which FCI Lompoc belongs. At the time of his death, he had approximately one year left to serve before his release.

24. Decedent tested positive for COVID-19 on or about May 7, 2020. Over time, he became increasingly ill, but his medical needs were ignored by correctional and managerial staff despite their awareness of his illness.

25. When he was symptomatic -- coughing and struggling for air for many days -- BOP correctional and managerial staff knew of his condition but disregarded a known and excessive risk to Decedent's medical needs by refusing to take him to a nearby off-site hospital, or provide appropriate treatment at the facility. On the day he died, Decedent was unable to breathe. He gasped for air and he prayed. Eventually, he lost consciousness and died.

26. For weeks before his death, the Decedent was visibly weakened and chronically and desperately short of breath.

27. For approximately two weeks before his death, the Decedent was too weak and short

of breath to get his own meals, such that other inmates on his floor retrieved them for him.

28. FNU GARDNER, FNU WRINKOVICH, Chaplain MICHAEL ROBERTS, and other BOP staff and managers, were specifically aware of decedent's profoundly weakened and ill condition in the weeks leading to his death, including his inability to even retrieve his own food because he was too weak and short of breath to walk the stairs.

29. FNU WRINKOVICH told the deceased on one occasion, "I guess you won't be eating if you can't make it up the stairs to get your food," but took no steps to help him or get him medical attention.

30. FNU CARO (who screens inmates for RDAP eligibility and was assigned to Dorm B), FNU GARDNER, and FNU JOHNSON witnessed the decedent's daily physical decline and struggles, but took no steps to get him medical attention.

31. Upon information and belief, in May 2020, decedent visited the medical unit several times in increasingly desperate efforts to secure care. Medical providers, including JASPAL DHALIWAL, M.D., WILLIAM WATSON, M.D., and GALYNA MISCHENKO, N.P., all interacted with him in the medical unit and dorm in the days and weeks prior to his death, but provided no meaningful care and no transfer to a hospital for off-site evaluation, but instead gave him an albuterol inhaler a few days before he died.

32. Defendant, BEN WOOTEN, DDS, visited B Dorm regularly during the COVID outbreak in May, 2020 to check inmate's conditions, including fevers. Less than a week before decedent's death, decedent informed WOOTEN that there was something very wrong with his breathing, but WOOTEN told him he did not have a fever and he would be fine.

33. Defendant JASON ALEXANDER encountered the deceased in his final weeks of life and was aware of his rapidly deteriorating condition, but took no steps, despite his administrative and medical responsibilities, to secure medical treatment necessary to address the Decedent's declining health due to COVID-19 infection.

34. On or about May 21, 2021, a group of approximately five to seven sick inmates, including the Decedent, visited the medical unit together in the hope of receiving medical evaluation and treatment.

35. At the conclusion of the visit, all of the sick inmates were sent to a tent located behind

the commissary which was set up to isolate patients infected with COVID-19.

36.  No medical care was rendered there, but a correctional officer was posted in the tent and was able to take action in the event of a medical emergency, including promptly calling for medical staff.

37.  The Decedent was the only member of the group visit who was sent back to his dorm, instead of to the tent.

38.  As a result of the aforesaid lack of attention and lack of staff presence in B Dorm during Decedent's final hours of life, a lengthy delay in providing any medical attention to the Decedent ensued while he struggled for air, lost consciousness, and died.

39.  As a direct consequence of such delay, timely and indicated medical steps -- including oxygen administration, mouth to mouth resuscitation, and advanced cardiac life support -- were not taken, and MOHAMED YUSUF lost his life.

40.  Defendant, SHANE FABIE, was among the medical and correctional staff who belatedly responded to Decedent's May 25 medical emergency and upon information and belief, he did no advanced cardiac life support treatment with breathing, and although he had in his possession a defribrllator on the scene to assess cardiac function, he never deployed it.

41.  Other medical and correctional staff who belatedly responded to Decedent's final medical emergency was GALYNA MISCHENKO, who, upon information and belief, refused to administer mouth to mouth resuscitation, brought no oxygen to the scene, and brought no bag valve mask (at times also referred to as an Ambu bag) to force feed room air or oxygen into Decedent's lungs, which was medically necessary given his condition.

42.  Due wholly and solely to the deliberately indifferent acts and omissions of the Defendants set forth herein, the Decedent was caused to sustain severe personal injuries, suffering, and death.

43.  On May 25, 2020, and prior thereto, in violation of the Eighth Amendment to the Constitution, the Defendants failed to deliver or secure necessary medical treatment for the Decedent, and thereby disregarded the apparent undue risk to his medical needs in contravention of their duty.

44.  Other inmates on May 25 witnessed and called attention to the Decedent's protracted

7
AMENDED COMPLAINT

struggle for life in an effort to help him. They called loudly to correctional staff in efforts to secure him help.

46. Upon information and belief, correctional staff heard the calls of the Decedent's fellow inmates and knew their essential nature, but still failed to act as dictated by their duties.

46. While correctional staff knew of Decedent's dire need for help, they did not provide prompt and appropriate care and assistance, and some joked about the matter, going so far as to call the Decedent a "faker" and a "wimp."

47. Contrary to their legal obligation to provide for the safe care and custody of those detained -- not to mention their fundamental duty to act in conformity with core precepts of human decency -- Lompoc staff and managers, including medical staff, failed to provide or secure medical treatment and disregarded Decedent's struggles for breath and life.

48. Deliberately indifferent to Decedent's plainly emergent medical needs, BOP employees and agents did not help him. They let him die without administering appropriate medical aid.

## SUMMARY OF LEGAL CLAIMS

49. Plaintiff brings claims against individual employees of the United States under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971), who are accountable for violating rights guaranteed Decedent under the Eighth Amendment to the United States Constitution. Additionally, Plaintiff pleads under the Federal Tort Claims Act for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1).

## FIRST CLAIM FOR RELIEF FOR
## VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW

(*Bivens Action Against All Defendants*)

50. Plaintiff repeats and re-alleges each preceding paragraph as though fully restated herein.

51. On or about the time period May 7 through May 25, 2020, at Lompoc FCI, the

8
**AMENDED COMPLAINT**

Defendants subjected the Decedent to cruel and unusual punishment when, with deliberate indifference to his health and welfare, they individually, collectively, and knowingly disregarded his medical condition and failed to deliver or secure medical assistance for him, proximately causing and/or contributing to his severe suffering and ultimate death.

52. In a press release twenty-one days before Decedent's death, BOP publicly announced that Lompoc's medical capabilities had been supplemented with a newly constructed Hospital Care Unit ("HCU") equipped with "ten double-occupancy, acute care treatment rooms with negative pressure, Patient Intake Room, Nurses Station, Pharmacy, Linen Exchange Room, Biohazard Room and Medical Supply and Storage."[1]

53. Decedent, however, during his illness, languished, coughed, thrashed, and gasped, ultimately dying on the floor of his prison unit, without receiving an iota of meaningful medical treatment or hospital attention.

54. Upon information and belief, Decedent visited the medical unit in increasingly desperate efforts to secure care. Medical providers, including the individual defendants, provided none other than giving him an albuterol inhaler several days before his death.

55. For weeks before his death, the Decedent was visibly weakened and chronically and desperately short of breath.

56. For approximately two weeks before his death, Decedent was too weak and short of breath to get his own meals

57. In violation of the Eighth Amendment to the Constitution, by failing to deliver or secure necessary medical treatment for the Decedent, Defendants disregarded obvious excessive risk to his medical needs in contravention of their duty.

58. In totally failing to address Decedent's emergency medical condition, the Defendants departed from accepted standards applicable to the security and oversight of the Decedent, and failed to follow appropriate security and emergency medical practice.

59. Defendants failures to properly and timely treat the Decedent's plainly visible dire illness resulted in his acute suffering and wrongful death.

---

[1] BOP Press Release, May 4, 2020, annexed as Exhibit A.

60. Each of the named Defendants and John Does were acting under color of law and exercised powers conferred upon them by virtue of their positions within the BOP.

61. Supervisory officials were malfeasant in the manner in which they oversaw assigned correctional officers and medical staff, and the manner in which they callously tolerated the inadequate response to Decedent's physical deterioration and ultimate death. Additionally, their individual culpable actions and failures to act in the training, supervision, and control of subordinates who owed a duty to Decedent, and their personal callous indifference to Decedent's dire and worsening medical condition in May 2020, render them liable to Plaintiff's Decedent in damages.

62. As a result of the aforesaid knowing and deliberately indifferent acts, Decedent was caused to sustain severe injuries, conscious pain and suffering, mental anguish, and death.

63. Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny, the Defendants, and all of them, are liable in damages to Plaintiff's Decedent for violating Decedent's constitutional rights as stated.

64. The acts of the named agents, and presently unknown correctional and supervisory staff, were all done under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the United States.

65. As a consequence of the foregoing, Plaintiff's Decedent has been damaged by the individual Defendants in a sum to be determined at trial, for compensatory, pecuniary, and punitive damages, together with taxable costs and appropriate and lawful fees.

**SECOND CLAIM FOR RELIEF FOR CAUSING**
**PERSONAL INJURY AND DEATH BY NEGLIGENCE OR WRONGFUL ACTS**
**(Non-Jury Action)**
(*FTCA Action Against the United States of America*)

66. Plaintiff repeats and re-alleges each preceding paragraph as though fully restated herein.

67. Correctional staff members failed to act in accordance with their legal duties to treat or secure treatment for the Decedent's illness, nor did they take appropriate actions to prevent his death when he was in evident medical extremis.

68. Their acts and omissions constitute a lazy, malfeasant, and/or careless failure to

perform required duties.

69. As set forth, the wrongful acts and omissions identified, which constitute on the part of United States' agents, negligence and gross negligence, and recklessness and gross recklessness, include, but are not limited to: failing to properly inspect, repair, and maintain the Lompoc facility to render its environs safe, clean, and suitable pursuant to COVID-19 guidelines and mandates, and thereby failing to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of an offense," as is required pursuant to 18 U.S.C. § 4042(a); in having both actual and constructive notice of the risks to health and safety of the Decedent posed by COVID-19, and to others similarly situated, without taking appropriate steps to address such circumstance and to safeguard the inmates whose safety was their charge; prior to Decedent's death, and prior to him becoming grievously ill and on the verge of death, in failing to provide adequate and emergently needed medical care; allowing the Decedent to needlessly suffer from a known dangerous illness without providing needed medical care, thereby causing Decedent to suffer pain in both mind and body, and to die; and thereby also causing Decedent's survivors to sustain economic loss, and be otherwise damaged.

70. Under the Federal Torts Claims Act, the Defendant, United States of America, is liable for the above described failures of its agents, servants, and employees, who by law were called upon to act in furtherance of their employment as BOP correction officers, staff, and supervisors by carrying out the appointed duties owed the Decedent, which instead, they neglected and ignored.

**PRAYER FOR RELIEF**

On account of all of the foregoing, Plaintiff prays for a JURY TRIAL with respect to his First Cause of Action and for relief as follows:

    A. On Plaintiff's First Cause of Action, compensatory, special, and punitive damages against personally responsible individual defendants in an amount to be proven at trial.

    B. On Plaintiff's Second Cause of Action, compensatory damages against the United States in an amount to be proven at trial.

    C. Interest, costs, and fees, to include attorney's fees.

    D. Any and all further relief as the Court deems just and equitable.

Dated: November 1, 2021

**HOLLISTER LAW OFFICE, APC**
Attorneys for Plaintiff
228 W. Carrillo Street, Suite D
Santa Barbara, CA 93101
(805) 284-0711

/s/ *Bradley C. Hollister*
Bradley C. Hollister

**ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
Attorneys for Plaintiff
100 Lafayette Street, Suite 501
New York, New York 10013

/s/ *Robert A. Soloway*
Robert A. Soloway